UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAC HOME LOANS SERVICING LP,                Case No. 11-10327

        Plaintiff,                                    District Judge Mark A. Goldsmith

v.                                          Magistrate Judge R. Steven Whalen

WELLS FARGO BANK, N.A., ET AL.,

        Defendants.
_____/

# REPORT AND RECOMMENDATION

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo's") Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. #s 9 and 10)[1], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE as to Defendant Wells Fargo.

## I. FACTS

On December 17, 2010, Plaintiff BAC Home Loans Servicing LP ("BAC") filed a complaint in Oakland County Circuit Court, alleging three Counts: to quiet title to real estate (Count I); for declaratory judgment (Count II); and unjust enrichment (Count III). Defendant Wells Fargo is named only in Counts I and II. Both of those Counts relate to two mortgages secured by Quicken Loans, Inc. ("Quicken") in 2003, one of which was assigned to Wells Fargo, and one of which was later assigned to BAC. The central question is which mortgage has priority.

---

[1] Doc. #9 is Defendant's motion, and Doc. #10 is the brief in support.

The basic historical facts are not in dispute, and are set forth as follows in chronological order:

1. On February 28, 2003, Quicken closed on two mortgage loans to Defendants Ghazi P. Paul and Jamila M. Paul. Each loan was secured by a separate mortgage on the subject property located at 6492 Nadine Lane, West Bloomfield, Michigan. One loan (whose associated mortgage was assigned to Wells Fargo on February 28, 2003, the same day as closing), #1690771098, was for $100,000.00, and the second loan (whose associated mortgage was subsequently assigned to BAC), #1690770998, was for $78,700.00.

2. Quicken recorded both mortgages on May 19, 2003. The $100,000.00 mortgage associated with Loan #1690771098 ("Wells Fargo mortgage") was recorded first, before the $78,700.00 mortgage associated with Loan #1690770998 ("BAC mortgage").

3. The Wells Fargo assignment was recorded on March 10, 2004.

4. The Pauls defaulted on these loans in 2009. Wells Fargo commenced foreclosure proceedings on its mortgage, and foreclosure notices were published in September, October and November of 2009. Wells Fargo bid for the property at a Sheriff's Sale on February 16, 2010, and was granted a Sheriff's Deed on that date. The Sheriff's Deed was recorded on February 23, 2010.

5. On November 23, 2009, while Wells Fargo's foreclosure proceedings were pending, BAC took an assignment of the $78,700.00 BAC mortgage.

6. Following the Sheriff's Sale on February 16, 2010, the six-month statutory redemption period expired on August 16, 2010, without the Pauls having redeemed.

7. BAC filed the present complaint in Oakland County Circuit Court on December 17, 2010.

While BAC concedes that the Wells Fargo mortgage was recorded first, it claims that it was "inadvertently recorded" before the BAC mortgage, and that in fact, the parties (i.e., the Pauls and Quicken) intended that the BAC mortgage would have priority. In their response [Doc. #11], BAC has submitted a number of closing documents in support of this claim.

Plaintiff's Exhibit G is a Home Equity Line Agreement, Disclosure Statement and Note ("HELOC") regarding the BAC mortgage, which, at ¶ 29, refers to the Pauls' obligation to deliver to Quicken "copies of the first mortgage affecting the Security" and to warrant that "all such first mortgages" are in full effect without default.

Exhibits L and M are closing instructions that refer to producing a "first lien letter" (Exhibit L), and state, "Loan must close simultaneously w/ first mtg."

Exhibit N is a Failure to Proceed Notice referring to the BAC mortgage loan as "First Mortgage Loan" and the Wells Fargo mortgage loan as "Second Mortgage Loan."

Exhibit O is an underwriting summary regarding the BAC mortgage. In the "Lien Position" section, this mortgage is designated "First Mortgage." Exhibit P is the underwriting summary for the Wells Fargo mortgage. That mortgage is designated "Second Mortgage."

Plaintiff has also submitted a number of "internal communications" that refer to the BAC mortgage and the Wells Fargo mortgage as the "first mortgage" and "second mortgage," respectively. Exhibits R and S.

Finally, and apparently contrary to the above documents, Plaintiff has submitted as Exhibit T a Borrower's Lien Affidavit related to the Wells Fargo mortgage, and signed by Mr. Paul. Plaintiff states that document was prepared by Quicken. It states that the BAC mortgage in the amount of $78,700.00 is being subordinated to the Wells Fargo mortgage.

It also states that a mortgage held by National City Bank in the amount of $46,301.00 is being subordinated.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."  In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2),[2] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v.*

---

[2] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

*City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[3] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### III.   DISCUSSION

This is a quiet title action that centers on a lien priority dispute. Without question, the Wells Fargo mortgage was recorded before the BAC mortgage. Because Michigan is a "race-notice" state, first in time is first in line, and therefore the Wells Fargo mortgage would presumably have priority. *See Lakeside Assoc. v. Toski Sands,* 131 Mich.App. 292, 298, 346 N.W.2d 92 (1983) ("Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests")(citations omitted). Thus, in *Richards v. Tibaldi*, 272 Mich.App. 522, 539-540, 726 N.W.2d 770 (2006), the Michigan Court of Appeals observed:

---

[3] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

> "If one were to assume that the 2002 quitclaim deed from KDC to plaintiff was valid, and considering that the deed was recorded in February 2004, before defendants' deed was executed and recorded in April and October 2004, respectively, plaintiff would clearly have superior title under Michigan law."

Substitute the word "mortgage" for "quitclaim deed,"[4] and *Tibaldi* is applicable to the present case. If the *Wells Fargo mortgage* is valid, and it was recorded *before the BAC mortgage*, the Wells Fargo "would clearly have superior title (or more specifically, priority) under Michigan law."

Nevertheless, BAC argues that under M.C.L. § 565.29,[5] Wells Fargo is not a "good faith purchaser," and therefore the BAC mortgage has priority. This is so, contends Wells Fargo, because under the race-notice statute, "if the party that recorded 'first' has notice of a third party's interest in the property, then the prior recorded party is not protected; rather it takes its interest subject to the other party regardless of recording first. The 'race to record' protects only those who record first without knowledge of another party's interest." *Plaintiff's Reply Brief* [Doc. #11], at 11. Positing that Quicken erroneously and inadvertently recorded the Wells Fargo mortgage first, BAC argues that Wells Fargo had both actual and constructive notice that Quicken and the Pauls actually intended that the BAC mortgage, although based on a lower amount, would have priority.

There are several problems with BAC's argument. First, BAC incorrectly casts

---

[4] A mortgage is a conveyance within the meaning of the recording acts. MCL 565.35; *Stover v. Bryant & Detwiler Improvement Corp of Detroit,* 329 Mich. 482, 484; 45 NW2d 364 (1951).

[5] M.C.L. § 565.29, Michigan's race-notice statute, reads as follows:

> "Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded."

Wells Fargo in the role of a "subsequent purchaser" who won the race to the County Clerk's Office ahead of a "prior purchaser." In fact, Wells Fargo took its assignment of the mortgage some six years before BAC took assignment of its mortgage. It is BAC, not Wells Fargo, that is the "subsequent purchaser."

Moreover, Wells Fargo recorded nothing, and neither BAC nor Wells Fargo raced to the Clerk's Office. Instead, it was the same entity–Quicken–that recorded both mortgages. BAC correctly notes that an assignee receives all the rights of the assignor. In this case, on May 19, 2003, the date that Quicken recorded both mortgages, Wells Fargo–which had already taken its mortgage assignment– received the priority position of its mortgage vis-a-vis the BAC mortgage, which was then held by Quicken.[6]

This leads to another fallacy. BAC argues that Wells Fargo had either actual or constructive knowledge of the assignor's real intent at the time its mortgage was recorded, and therefore had a duty to look beyond the facts of record. But at the time Quicken recorded the mortgages, Wells Fargo had already taken its assignment. And when BAC purchased its mortgage six years later, it would have known through the public record that the Wells Fargo mortgage had priority by virtue of having been recorded first. If the underlying mortgage documents called that priority into question, did BAC not have the same obligation of due diligence it now ascribes to Wells Fargo? In effect, BAC is turning M.C.L. § 565.29 on its head: it was BAC, not Wells Fargo, that failed to qualify as a "bona fide purchaser."

Indeed, M.C.L. § 565.25 provides that the recordation of a mortgage gives "all persons" notice of the lien, and that "[a]ll subsequent owners or encumbrances shall take

---

[6] During the six years that Quicken held the mortgage that it assigned to BAC in 2009, it did nothing to correct any "mistake" in the public record.

-7-

subject to the perfected liens, rights, or interests." In *Ameriquest Mortg. Co. v. Alton*, 273 Mich.App. 84, 93-94, 731 N.W.2d 99 (2006), *lv den.* 480 Mich. 944 (2007), the Court of Appeals held that a subsequent purchaser's failure to discover the prior recorded lien cannot alter the order of priority:

> "The mandate expressed in MCL 565.25(4) is clear: *recordation of a mortgage charges third parties with constructive notice and serves to determine lien priority.* Accordingly, a properly recorded mortgage is notice to all subsequent purchasers that they take subject to any lien the mortgagor may have on the property whether the record has been examined or not. *Piech v. Beaty,* 298 Mich. 535, 538, 299 N.W. 705 (1941). There can be no dispute, given the statutory language, that Alton's mortgage, having been first recorded, has priority over Ameriquest's mortgage. *The failure of Ameriquest's title-insurance commitment to discover Alton's duly recorded prior mortgage does not serve to nullify the constructive notice provided by the recordation or to alter the priority status of Alton's mortgage.* See *Lewis v. Hook,* 18 Mich.App. 405, 409, 171 N.W.2d 221 (1969)." (Emphasis added).

M.C.L. § 565.25(4) and *Alton* also protect Wells Fargo's position as the purchaser of the property at the Sheriff's Sale. *Credit Based Asset Servicing & Securitization, LLC v. Flagstar Bank*, 2007 WL 866935 (Mich. App. 2007), is on point with the present case. In *Flagstar*, a property owner took out two mortgages with Homegold Mortgage on the same day. A mortgage for $48,749.22 extinguished a previous mortgage, and a mortgage of $16,248.75 was taken out to pay off the borrower's unsecured debts. Both mortgages were recorded on the same day, with the smaller mortgage being recorded first. The assignee of the larger mortgage contended that this was a mistake, and that the larger mortgage should have been given priority. In any event, the borrower defaulted on the smaller mortgage, and the assignee of that mortgage foreclosed and purchased the property at a Sheriff's Sale. After the foreclosure proceedings, Homegold assigned the larger mortgage to Credit Based Asset Servicing, the plaintiff in the case. As in the present case, Credit Based Asset Servicing argued that the purchaser at the Sheriff's Sale,

as well as the ultimate purchaser of the property, had constructive notice of the parties' original intent (i.e., that the larger mortgage would have priority) by virtue of closing documents that referred to the smaller mortgage as a "second mortgage," and the fact that the two mortgages "were recorded seconds apart." *Flagstar*, at *2.

The Court in *Flagstar*, relying on *Richards v. Tibaldi*, *Alton*, and the older case of *Barnard v. Campau*, 29 Mich. 162 (1874), rejected the argument that the purchasers had either actual or constructive notice. Holding that there was no duty to investigate the underlying transactions in view of the unambiguous public record showing that the smaller mortgage was recorded first, *Flagstar* held:

> "It is also undisputed that a foreclosure sale based on a first recorded mortgage, i.e., the $16,248.75, generally extinguishes any claim of title based on a later recorded, or 'junior' mortgage, i.e., the $48,749.22. *Given the coupling of these circumstances, i.e., the order of the recordation of the mortgages and the foreclosure sale based on the first-recorded mortgage, we cannot conclude that an 'honest man, using ordinary caution,' Richards, supra at 539, would be on notice to make further inquiries concerning the possible rights of another in the real estate.* That is, defendants would have no reason to suspect a defect in the title...." (Emphasis added). *Flagstar* at *3.

*Flagstar* also gave short shrift to the plaintiff's argument that the order of recordation was the result of a mistake. Quoting *Barnard v. Campau*, 29 Mich. at 163-64, the Court stated at *4:

> "*In general it will not be disputed that one who seeks a benefit from the recording laws must incur all risks of the failure to put his papers duly upon record, whether the fault shall be his own or that of an officer*. An equitable construction cannot be put upon such laws by which they may be made to embrace cases not within them, or by means of which they may be made to give constructive notice of things the records do not show. *And it has therefore been generally held that if a mistake has been made in recording, by means of which a mortgage appears to be for a less sum than it was in fact given for, or a deed to cover less than was embraced by it, a subsequent purchaser has a right to rely on the record as showing the exact facts*." (Emphasis added).

Finally, *Flagstar* stated in dicta that even if the purchasers were charged with

knowledge of the underlying mortgage documents, those documents were ambiguous, some tending to show that the higher mortgage was the "first mortgage," and some showing that it was the "second mortgage." Therefore, the Court said that "we cannot conclude that, in this case, the documents and their contents warrant charging defendants with notice of the possibility of a third-party interest." *Id*. at *3. So too in the present case, BAC has submitted documents (some boilerplate) suggesting that its mortgage was the first mortgage, and another (the Borrower's Lien Affidavit) clearly stating that the BAC mortgage was subordinate to the Wells Fargo mortgage. Apart from the fact that Wells Fargo had no duty to investigate, the unrecorded and ambiguous mortgage documents are insufficient to provide constructive notice that the clear public record was wrong.[7]

It is also noteworthy that not only did BAC have actual notice from the public record that its mortgage was subordinate, but it purchased the mortgage while public foreclosure proceedings were under way. Because BAC nevertheless acquired the mortgage with its eyes open to this public information, it assumed the risk associated with its purchase, and cannot now ask for the equitable remedy of a quiet title action. As the

---

[7] BAC cites *Richards v. Tibaldi* in support of its argument that the unrecorded mortgage documents were sufficient to give Wells Fargo notice of BAC's priority. *Plaintiff's Brief* [Doc. #11] at 11. In *Tibaldi*, however, the possibility of a cloud on the title was apparent from the information on record, not from extrinsic and unrecorded documents. The Court explained, 272 Mich.App. at 540:

> "When defendants received their deed in April 2004, there existed, *on record at the register of deeds office*, a quitclaim deed showing a conveyance of the property from KDC to plaintiff in 2002, while defendants' deed reflected a conveyance of the same property from KDC to them. There was no deed on record showing that plaintiff had conveyed the property back to KDC, nor any deed showing that plaintiff had conveyed the property to the Keytons. Ordinary caution would have dictated the need to make further inquiries concerning plaintiff's possible rights in the property." (Emphasis added).

Michigan Supreme Court observed in *Chilton's, Inc. v. Wilmington Apartment Co.*, 365 Mich. 242, 248, 112 N.W.2d 434 (1961), "A court of equity will not relieve a party from the consequences of a risk which he voluntarily assumes" (citing and quoting *Patterson v. Brown*, 32 N.Y. 81; *McCredie v. Buxton*, 31 Mich. 383, 388; *Blunt v. Auditor General*, 324 Mich. 675, 680, 37 N.W.2d 671).

Moreover, BAC did not commence its quiet title action until ten months after the Sheriff's Sale, and four months after the redemption period expired. In *Flagstar*, at *4, the Court observed:

> "Moreover, as noted in *Barnard,* one who seeks a benefit from the recording laws must incur all risks of the failure to act in accordance with the laws. See *Barnard, supra* at 163. Here, plaintiff did not accept the assignment of the alleged defectively recorded mortgage until 2004, long after the conveyances to defendants occurred and were recorded. Any detriment inured is the result of plaintiff's own failure to act in accordance with the notice of defendants' interests, plainly given in the public records."

*See also Kuschinski v. Equitable & Central Trust Co.*, 277 Mich. 23, 26, 268 N.W. 797 (1936) ("[I]n seeking to set aside a foreclosure sale, the moving party must act promptly after he becomes aware of the facts upon which he bases his complaint"); *Ursery v. Option One Mtg. Corp.*, 2007 WL 2192657, *9 ("[B]ecause Ursery did not assert his challenge to the acceleration, foreclosure, sale and sheriff's deed until *very* late–after the six-month redemption period expired (at which time title vested in Option One)–Ursury is guilty of laches")(emphasis in original).

Accordingly, Defendant Wells Fargo is entitled to summary judgment.

### IV.   CONCLUSION

For these reasons, I recommend that Defendant Wells Fargo's Motion to Dismiss

or, in the Alternative, for Summary Judgment [Doc. #s 9 and 10] be GRANTED.[8]

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>R. STEVEN WHALEN<br>UNITED STATES MAGISTRATE JUDGE

Date: February 27, 2012

---

[8] In its response [Doc. #11], BAC requests that it be granted summary judgment. Such request must be made by separate motion, not within a response to a motion. *See* Fed.R.Civ.P. 7(b)(1). Nevertheless, I would recommend that BAC's request be denied in any event, for the reasons discussed in this Report and Recommendation.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 27, 2012.

| | |
|---|---|
| Ghazi P. Paul And Jamila M. Paul<br>22277 W 12 Mile Rd Apt 13<br>Southfield, MI 48034-4667 | s/Johnetta M. Curry-Williams<br>Case Manager |